**BEN TRAVIS LAW, APC**
Ben Travis (SBN 305641)
ben@bentravislaw.com
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

**REESE LLP**
Michael R. Reese (SBN 206773)
mreese@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

Charles Moore (*pro hac vice*)
cmoore@reesellp.com
121 N. Washington Ave., 2nd Floor
Minneapolis, MN 55401

*Attorneys for Plaintiff Mikhail Gershzon
and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKHAIL GERSHZON, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>EVENT TICKETS CENTER, INC., a Florida Corporation;<br><br>Defendant. | Case No: 3:24-cv-04142-RS<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY LITIGATION**<br><br>Date: July 31, 2025<br>Time: 1:30 PM<br>Courtroom: 3<br>Judge: Hon. Richard Seeborg<br><br>Complaint Filed: July 9, 2024 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF ISSUES TO BE DECIDED ............................................................................. 2

PROCEDURAL BACKGROUND.................................................................................................. 2

LEGAL STANDARD ..................................................................................................................... 4

ARGUMENT ................................................................................................................................... 5

    I.    The Court has the Authority to Rule on Waiver ................................................... 5

    II.   Defendant Waived the Right to Arbitrate .............................................................. 7

        A.    Defendant knew about the agreement ....................................................... 7

        B.    Defendant acted inconsistent with the right to arbitrate ............................ 7

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Armstrong v. Michaels Stores, Inc.*,
  59 F.4th 1011 (9th Cir. 2023) ............................................................................... 1, 4, 5, 12

*Banq, Inc. v. Purcell*,
  2024 WL 4164126 (9th Cir. Sept. 10, 2024) ............................................................. 7, 12

*Chan v. Panera, LLC*,
  2024 WL 4137332 (C.D. Cal. Sept. 3, 2024) ..................................................... 7, 8, 10, 12

*Comm. Dental Serv. v. Tani*,
  282 F.3d 1164 (9th Cir. 2002) .......................................................................................... 10

*Cox v. Ocean View Hotel Corp.*,
  533 F.3d 1114 (9th Cir. 2008) ............................................................................................ 5

*DropZoneMS, LLC v. Cockayne*,
  2019 WL 2070417 (D. Or. Feb. 27, 2019) ......................................................................... 9

*Earn Guild PTE LTD v. Crowdcreate, LLC*,
  2024 WL 5365055 (C.D. Cal. Dec. 16, 2024) .................................................................... 8

*Hill v. Xerox Bus. Serv., LLC*,
  59 F.4th 457 (9th Cir. 2023) ............................................................................................... 7

*In re Google Assistant Privacy Litig.*,
  2024 WL 251407 (N.D. Cal. Jan. 23, 2024) ....................................................................... 7

*KST Data, Inc. v. DXC Tech, Co.*,
  980 F.3d 709 (9th Cir. 2020) ............................................................................................. 9

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016) ............................................................................... 5, 6, 7, 8

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011) ............................................................................................. 5

*Morgan v. Sundance, Inc.*,
  142 S.Ct. 1708 (2022) ............................................................................................ 1, 4, 9, 13

*Noble v. Bank of America, N.A.*,
  2015 WL 6602552 (N.D. Cal. Oct. 29, 2015) .................................................................... 7

*Plows v. Rockwell Collins, Inc.*,
  812 F.Supp.2d 1063 (C.D. Cal. 2011) .......................................................................... 7, 12

*Powel v. UHG I LLC*,
  2024 WL 2305206 (S.D. Cal. May 21, 2024) .......................................................................... 13

*Reinsdorf v. Skechers U.S.A., Inc.*,
  296 F.R.D. 604 (C.D. Cal. 2013) ........................................................................................... 10

*Slaten v. Experian Information Solutions, Inc.*,
  2023 WL 6890757 (C.D. Cal. Sept. 6, 2023) .................................................................. passim

**<u>RULES</u>**

Federal Rule of Civil Procedure 8(c)(1) ........................................................................................ 9

Federal Rule of Civil Procedure 26(f) .................................................................................. 12, 13

Plaintiff Mikhail Gershzon ("Plaintiff") files the following memorandum of law in opposition to the Motion to Compel Arbitration ("Motion" or "Def. Mem") (ECF No. 32) filed by Defendant Event Tickets Center, Inc. ("Defendant" or "ETC").

## INTRODUCTION

In 2022, the Supreme Court re-centered the jurisprudence on arbitration. Specifically, in *Morgan v. Sundance, Inc.*, in discussing the Federal Arbitration Act's ("FAA") "policy favoring arbitration," it stated:

> The policy is to make "arbitration agreements as enforceable as other contracts, but not more so." Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.

*Morgan v. Sundance, Inc.*, 142 S.Ct. 1708, 1713 (2022) (citations omitted).

The *Morgan* court noted that,

> Section 6 of the FAA provides that any application under the statute—including an application to stay litigation or compel arbitration—"shall be made and heard in the manner provided by law for the making and hearing of motions" (unless the statute says otherwise). A directive to a federal court to treat arbitration applications "in the manner provided by law" for all other motions is simply a command to apply the usual federal procedural rules, including any rules relating to a motion's timeliness. Or put conversely, it is a bar on using custom-made rules, to tilt the playing field in favor of (or against) arbitration.

*Id.* at 1714.

With this re-centering, the Ninth Circuit adjusted its position on waiver, in the arbitration context, to align with every other instance of waiver, *i.e.* "1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023).

Here, Defendant has met both. It has litigated this matter for nearly a year. In that time, it answered the complaint, twice submitted to the Court a Rule 26(f) report, proposed a schedule that included deadlines to move for class certification, ***requested a jury trial***, and engaged in discovery that encompassed Plaintiff and the putative class members. And all this time, nary a word about arbitration.

It is preposterous to say Defendant did not know of the terms on its own website, which it drafted. That it chose not to enforce some of those terms is a strategic decision that lies squarely on its shoulders. That it now has new counsel with new strategies does not entitle it to rewrite the choices it has already made. Quite simply, it made a decision and must now live with it.

## STATEMENT OF ISSUES TO BE DECIDED

Whether Defendant waived its right to invoke the arbitration agreement in the terms it drafted and placed on its website when it litigated the action for nearly a year, including answering the complaint, submitting Rule 26(f) reports, submitting stipulated protective orders, setting a schedule for class certification, requesting a jury trial, and engaging in discovery?

## PROCEDURAL BACKGROUND

On July 9, 2024, Plaintiff filed this action; nearly a year ago. *See* ECF No. 1

On September 11, 2024, the parties filed a Stipulated Protective Order. *See* ECF No. 11.

On September 30, 2024, Defendant filed an answer that did not mention arbitration, including in its affirmative defenses. *See* ECF No. 14.

On October 4, 2024, the parties filed a Joint Case Management Statement. *See* ECF No. 18. In the "Motions" section, Defendant stated, "Defendant anticipates opposing any Motion for Class Certification. Defendant also may file a Motion for Summary Judgment/Adjudication." *Id.* § 4. In the "Discovery" section, Defendant stated, "Defendant will serve discovery shortly. Defendant asserts discovery should be bifurcated because Defendant contends Plaintiff does not have viable individual claims." *Id.* § 8. In the "Narrowing of the Issues" section, it stated, "The Parties have identified that the following issues can be narrowed by motion: (1) whether Plaintiff may maintain the action as a class action, based upon Rule 23." *Id.* § 14. The "parties" offered a proposed schedule, which included dates for class certification briefing, beginning in August 2025. *Id.* § 15, as well as additional dates pegged off of "a ruling on Plaintiff's Motion for Class Certification." Finally, in the "Trial" section, Defendant stated, "Defendant also **requests a jury trial** and anticipates trial will take two weeks." *Id.* § 16 (emphasis added).

After this case was reassigned, the parties refiled the Joint Case Management Statement on October 24, 2024. The only substantive difference from the previous version was that it reflected

2

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

that initial disclosures were already served. *See* ECF No. 22

On October 31, 2024, the parties resubmitted the Stipulated Protective Order. *See* ECF No. 25. That same day, the Court held a Case Management Conference, in which it adopted the parties' proposed schedule on Plaintiff's Motion for Class Certification. *See* ECF No. 26.

On November 14, 2024, Defendant filed a Notice of Related Case and requested to have a separate case, *Hernandez v. Event Tickets Centers, Inc.*, No. 2:24-cv-1983-DAD-AC (E.D. Cal.), transferred and related to this action. *See* ECF No. 27. As part of that request, Defendant noted that both seek to represent putative classes. *Id.*¶ 4. It then argued that "adjudicating these two cases separately risk judicial interference and inconsistent judgments for substantially similar cases in two different District Courts." *Id.* ¶ 5. It therefore requested "that the subsequently filed *Hernandez* matter be transferred to same District Judge for this current case, the Honorable Richard Seeborg in the Northern District of California." *Id.*

On November 8, 2024, Plaintiff served his first set of discovery requests on Defendant, which Defendant answered on December 9, 2024. Declaration of Ben Travis, ¶ 3. Defendant also produced documents in response. *Id.*

On December 20, 2024, Plaintiff served his second set of discovery requests on Defendant, which Defendant answered substantively on February 4, 2025. *See* Travis Decl., ¶ 4. Several of these requests were clearly focused at the class as a whole, for example, seeking "All complaints YOU received from consumers since 2020 RELATING TO counterfeit tickets," and "State the total number of events for which tickets were sold through YOUR website since July 9, 2020." At no time did Defendant object based on the arbitration clause. *Id.*. Along with the responses, Defendant produced documents. *Id.*

On March 12, 2025, the Parties had a meet-and-confer conference to discuss issues with Defendant's responses and production. At no time during the call was arbitration mentioned. The Parties agreed that Defendant's Counsel would speak to his client to obtain additional documents and provide amended responses. The Parties agreed that Plaintiff will summarize the issues in a letter. Travis Decl. ¶ 5.

3
PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

On March 20, 2025, Defendant moved to substitute counsel, which was granted on March 24, 2025. *See* ECF No. 31.

On April 3, 2025, the Parties met again and discussed various aspects of the case including discovery. Travis Decl. ¶ 6. Plaintiff agreed to send a deficiency letter to Defendant's counsel so that he could discuss with his client, and the Parties could have a meaningful discussion. *Id*.

On April 22, 2025, Plaintiff sent a deficiency letter to Defendant regarding its production and responses and requested to meet and confer regarding the discovery disputes and other items on April 24, 2025. Travis Decl. ¶ 7. On April 24, 2025, prior to the scheduled call, Defendant raised for the first time that it intended to file a Motion to Compel Arbitration. *Id.* ¶ 8.

On May 23, 2025—ten and a half months after the action was filed—Defendant moved to compel arbitration.

## LEGAL STANDARD

"The [Supreme] Court in *Morgan* clarified that the pro-arbitration 'federal policy is about treating arbitration contracts like all others, not about fostering arbitration.'" *Armstrong*, 59 F.4th at 1014 (quoting *Morgan*, 142 S. Ct. at 1713). "Put differently, the pro-arbitration federal policy is 'to make "arbitration agreements as enforceable as other contracts, but not more so."'" *Armstrong*, 59 F.4th at 1014 (quoting *Morgan*, 142 S. Ct. at 1713). "No longer is there a 'special' rule favoring arbitration. Rather, courts 'must hold a party to its arbitration contract just as the court would to any other kind' but 'may not devise novel rules to favor arbitration over litigation.'" *Armstrong*, 59 F.4th at 1014 (quoting *Morgan*, 142 S. Ct. at 1713). "And it is error to require parties arguing waiver of the right to arbitration to demonstrate prejudice because 'the usual federal rule of waiver does not include a prejudice requirement.'" *Armstrong*, 59 F.4th at 1014 (quoting *Morgan*, 142 S. Ct. at 1714). "In short, contractual waiver generally requires 'an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished,' with no required showing of prejudice." *Armstrong*, 59 F.4th at 1014.

In *Armstrong*, the Ninth Circuit "recognize[d] that *Morgan* overruled [its] prior precedents in two respects." *Id.* "First, *Morgan* teaches that there is no 'strong federal policy favoring

enforcement of arbitration agreements.'" *Id.* "The federal policy is to treat arbitration agreements like other contracts." *Id.* "Although the party opposing arbitration still bears the burden of showing waiver, the burden is no longer 'heavy.'" *Id.* "Instead, the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Id*. at 1015. "Second, as we recently noted, *Morgan* abrogates our precedents to the extent they required the party opposing arbitration to demonstrate prejudice." *Id.* "In view of *Morgan*, the party asserting waiver must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Id.*

# ARGUMENT

## I. The Court has the Authority to Rule on Waiver

As a threshold matter, the Court has authority to rule on whether Defendant waived the right to arbitrate. "The issue of waiver is a 'question of arbitrability' that is presumptively for a court to decide." *Slaten v. Experian Information Solutions, Inc.*, 2023 WL 6890757, at *2 (C.D. Cal. Sept. 6, 2023) (quoting *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016)). "But the parties may choose to have an arbitrator decide that issue by including 'clear and unmistakable language to that effect' in the arbitration agreement." *Slaten*, 2023 WL 6890757, at *2 (quoting *Martin*, 829 F.3d at 1124).

> Two Ninth Circuit cases are instructive. In *Martin*, the Ninth Circuit found that an arbitration provision providing that "all determinations as to the scope, enforceability, and effect of this arbitration agreement shall be decided by the arbitrator, and not by a court" failed to overcome the presumption that the court should decide waiver. 829 F.3d at 1124. In so holding, the Ninth Circuit relied on its earlier decision in *Cox*, where it had addressed the merits of a waiver issue despite an even broader arbitration provision providing that "***any controversy*** involving the construction or application of the terms, provisions, or conditions of this Agreement or ***otherwise arising out of or related to this Agreement*** shall likewise be settled by arbitration." *Id.* (citing *Cox*, 533 F.3d at 1117 (emphasis added)). By contrast, the Ninth Circuit in *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011), held that a provision "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause" was clear and unmistakable evidence that the parties intended to delegate questions of arbitrability—in that case, the scope of the arbitration agreement—to the arbitrator.

*Slaten*, 2023 WL 6890757, at *3 (emphasis in original).

In *Slaten*, the court applied this precedent to the following clause:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement including, but not limited to any claim that all or any part of this arbitration provision or Agreement is void or voidable.

*Id.*

The *Slaten* court determined, "[t]he Arbitration Provision is as broad as the provisions in *Martin* and *Cox* and similarly does not mention waiver." *Id.* "Nor is it clear whether the delegation of '[a]ll issues ... including ... any claim that all or any part of this arbitration provision or Agreement is void or voidable' unmistakably encompasses waiver resulting from [the defendant's] own conduct in judicial proceedings." *Id.*

Defendant relies on *Momot* to argue that the following language means that all questions of arbitrability have been delegated to the arbitrator. *See* Motion at 10-11.

> Any controversy, claim, dispute, or other action, arising out of or relating to the use of SITE, any order placed on SITE, or these policies including any dispute over the validity, enforceability, or scope of this arbitration provision (a 'CLAIM' or 'CLAIMS') shall be resolved through binding arbitration administered by the American Arbitration Association.

Declaration of Eric Vikmanis, ECF No. 32-1, ¶ 7, Ex. A.

This language is no broader than that in *Martin*, *Cox*, and *Slaten*, which were found ***not*** to clearly delegate the issue of waiver. For example, the *Slaten* agreement delegated decisions on the "scope and enforceability of this arbitration provision", but this was still not broad enough to encompass the issue of waiver. *Slaten*, 2023 WL 6890757, at *3. Equally, the language in *Martin* encompassed "all determinations as to the scope, enforceability, and effect of this arbitration agreement," yet did not clearly delegate the issue of waiver. *Martin*, 829 F.3d at 1124.

And as the *Slaten* court pointed out, "*Momot* is distinguishable as it addressed whether a similarly broad provision encompassed a straightforward question of arbitrability and the scope of the agreement, not waiver." *Slaten*, 2023 WL 6890757, at *3 .

Quite simply, the agreement does not contain the "clear and unmistakable language" necessary to delegate the question of waiver. As such, it is for the Court.

## II. Defendant Waived the Right to Arbitrate

"A party asserting waiver must show '(1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right.'" *Slaten*, 2023 WL 6890757, at * 4 (quoting *Hill v. Xerox Bus. Serv., LLC*, 59 F.4th 457, 468-69 (9th Cir. 2023)). Both are present here.

### A. Defendant knew about the agreement

It is well settled that "[k]nowledge of a contractual right to arbitrate is imputed to the contract's drafter." *In re Google Assistant Privacy Litig.*, 2024 WL 251407, at *4 (N.D. Cal. Jan. 23, 2024) (quoting *Plows v. Rockwell Collins, Inc.*, 812 F.Supp.2d 1063, 1066 (C.D. Cal. 2011)). Defendant is the drafter of the agreement, and thus, it is imputed to have knowledge of the agreement on its own website, including the arbitration provision within it. *See* Declaration of Doug Kruse, ECF No. 32-4, ¶¶ 5-6 ("By clicking 'Place Order,' you are agreeing to EventTicketsCenter.com's terms & polices").

It would make a mockery of the judicial system to say that Plaintiff was aware of the terms by clicking the "PLACE ORDER" button, but Defendant—who drafted the terms and created the website—was not. In short, there is no plausible argument that Defendant was not aware of its terms, and with it, its right to arbitrate. *Noble v. Bank of America, N.A.*, 2015 WL 6602552, at *3 (N.D. Cal. Oct. 29, 2015) ("Even if a party neither reads an agreement nor considers the legal consequences of signing it, the signing party is presumed to know its contents and is thus bound").

### B. Defendant acted inconsistent with the right to arbitrate

"There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Banq, Inc. v. Purcell*, 2024 WL 4164126, at *1 (9th Cir. Sept. 10, 2024) (quoting *Martin*, 829 F.3d at 1125). "Rather, the Court considers the 'totality of the parties' actions.'" *Id.* "But 'a party's extended silence and delay in moving for arbitration may indicate a "conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims," which would be inconsistent with a right to arbitrate.'" *Chan v. Panera, LLC*, 2024 WL 4137332, at *2 (C.D. Cal. Sept. 3, 2024) (quoting *Martin*, 829 F.3d at 1125). "Generally, a party acts inconsistently with exercising the right to arbitrate where he 'chooses to delay his right to

7

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

compel arbitration by actively litigating his case to take advantage of being in federal court.'" *Chan*, 2024 WL 4137332, at *2 (quoting *Martin*, 829 F.3d at 1125).

On all fours, in *Earn Guild PTE LTD v. Crowdcreate, LLC*, the plaintiff hired the defendant to market its business. *Earn Guild*, 2024 WL 5365055, at *1 (C.D. Cal. Dec. 16, 2024). In November 2023, the plaintiff filed suit for breach of contract. *Id.* In January 2024, the defendant filed an answer, which did not include any discussion of arbitration. *Id.* The parties then filed a Joint Rule 26(f) report, and participated in a scheduling conference. *Id.* On October 1, 2024, the court granted the defendant's request to substitute attorneys. *Id.* On October 29, 2024, the defendant filed a motion to compel arbitration. *Id.* The plaintiff opposed, arguing the defendant waived the right to arbitrate. *Id.* at *2.

In ruling on the motion, the *Earn Guild* court noted:

> the record is devoid of any mention of arbitration by Defendant, until this Motion was filed. Defendant did not assert the right to arbitrate as a defense in its Answer, Defendant did not mention arbitration in any of its reports submitted to the Court, nor is there any evidence presented to the Court that Defendant mentioned arbitration in any of the several conferences held with Plaintiff and the Court.

*Id.* at *3.

The court went on:

> The fact that Defendant signaled its intention to file a dispositive motion to enforce sections of the Agreement, but not the Arbitration Clause, weighs in favor of finding Defendant made an intentional decision to litigate in this Court and not to enforce the Arbitration Clause. Notably, in the "Substantive Motions" section of both the first and second 26(f) Report, Defendant stated, "Defendant anticipates filing a dispositive motion to enforce the specific and unambiguous provisions in Sections 4 and 6 in the contract between the parties that there is 'no right to chargebacks or refunds, for any reason'." (Dkt. Nos. 16, 26.) Defendant could have, but did not, state an intent to move to enforce the Arbitration Clause, Section 8 of the Agreement.

*Id.*

Ultimately, the *Earn Guild* court held that the defendant waived the right to seek arbitration. *Id.*

The *Earn Guild* decision is nearly a carbon copy of what happened in the case at bar. Plaintiff filed the action nearly a year ago. Defendant filed an answer, but that answer contained no mention of arbitration, including in its affirmative defenses, even though arbitration is a

8
PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

specifically enumerated affirmative defense under Federal Rule of Civil Procedure 8(c)(1). *See Morgan*, 596 U.S. at 414 ("Sundance then answered Morgan's complaint, asserting 14 affirmative defenses—but none mentioning the arbitration agreement"); *see also KST Data, Inc. v. DXC Tech, Co.*, 980 F.3d 709, 714 (9th Cir. 2020) ("Generally, an affirmative defense that is not asserted in an answer to the complaint is waived or forfeited by the defendant").

The parties filed a Joint Case Management Statement, but at no point in the Joint Case Management Statement did Defendant make any mention of arbitration. To the contrary, it discussed filing dispositive motions and set out dates for Plaintiff to move for class certification. This runs directly contrary to the arbitration clause's Class Action Waiver, which Defendant now seeks to enforce. *See* Motion at 11. Equally, Defendant **requested a jury trial**, which is also excluded by the arbitration clause. *See* Vikmanis Decl., Ex. A at 12 ("BY AGREEING TO ARBITRATE, USER IS GIVING UP THE RIGHT TO LITIGATE (OR PARTICIPATE IN AS A PARTY OR CLASS MEMBER) ANY AND ALL CLAIMS IN COURT BEFORE A JUDGE OR JURY. INSTEAD, A NEUTRAL ARBITRATOR WILL RESOLVE ALL CLAIMS").

The parties submitted a Stipulated Protective Order, and took part in a Case Management Conference where the Court adopted a proposed schedule on class certification. Again, there was no mention of arbitration.

Defendant tried to have another case related to this suit, arguing "adjudicating these two cases separately risk judicial interference and inconsistent judgments for substantially similar cases in two different District Courts." ECF No. 27. ¶ 5.

The parties engaged in discovery, with Plaintiff serving multiple rounds of discovery requests, and the parties met and conferred several times. These requests and the subsequent productions encompassed both Plaintiff and the class members. Yet there was no objection or even mention of arbitration.

This procedural posture aligns almost perfectly with that in *Earn Guild*, and like *Earn Guild*, it was only after Defendant switched counsel, and presumably strategy, that it moved to compel arbitration. But "retaining new counsel does not provide the opportunity to re-strategize a lawsuit." *DropZoneMS, LLC v. Cockayne*, 2019 WL 2070417, at *5 (D. Or. Feb. 27, 2019); *see*

9
PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION

*Comm. Dental Serv. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002) ("Clients are 'considered to have notice of all facts known to their lawyer-agent'"); *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 621 (C.D. Cal. 2013) ("Once again, Reinsdorf is bound by the decisions of his prior counsel and cannot use those decisions, now that he disagrees with them, as a basis to reopen discovery").

Like the defendant in *Earn Guild*, Defendant took multiple acts which were inconsistent with its right to arbitrate, instead seeking to litigate this matter in this court.

But *Earn Guild* is not alone. Equally instructive is the decision in *Chan v. Panera, LLC*. In *Chan*, the plaintiff brought suit against her employer for violations of California's Labor Code. *See Chan*, 2024 WL 4137332, at *1 (C.D. Cal. Sept. 3, 2024). The plaintiff originally brought suit in Los Angeles County Superior Court, but the defendant removed under CAFA. *Id.* Sometime later, when the defendant moved to compel arbitration, the plaintiff opposed, arguing waiver. *Id.* The court agreed, noting Panera waited fifteen months to file the motion. *Id.* at *3. Panera argued that the delay was due to a mediation, but the court was not buying it, noting "because the Court did not stay the action, litigation was in full swing." *Id.* Additionally, the court held that "Panera engaged in extensive litigation conduct that was inconsistent with the intent to arbitrate. The action was initiated on April 21, 2023, and rather than move to compel arbitration, Panera answered the Complaint and removed the action to federal court under CAFA." *Id.* It also noted that, "[w]hile the motion to remand was being litigated, the parties also engaged in a Rule 26(f) conference and submitted a Joint Rule 26(f) Report with a proposed litigation schedule. On October 5, 2023, the Court issued a Scheduling Order and still, Panera had not moved to compel arbitration." *Id.* (citation omitted) "Instead, Panera began engaging in discovery. As Chan points out, Panera has responded to substantial discovery requests in this action. This included multiple meet-and-confer efforts, three informal discovery conferences, responses to formal discovery requests, and then supplemental responses." *Id.* (citation omitted). The court also noted that "the parties stipulated to the entry of a protective order to facilitate the exchange of class-related discovery and, once again, Panera did not mention an intent to compel arbitration." *Id.* "Following entry of the protective order, Panera provided time records, payroll records, and contact information for 20% of the putative Class Members." *Id.* at *4.

As with *Earn Guild*, the *Chan* procedural history aligns closely with the case at bar where Defendant: 1) answered the complaint; 2) engaged in a Rule 26(f) conference and submitted a Rule 26(f) Report; 3) proposed and allowed the Court to adopt a schedule for class certification; 4) filed a Stipulated Protective Order; and 5) engaged in discovery, including the exchange of information relevant to class certification. All the while, Defendant was silent on arbitration.

Equally instructive is the decision in *Slaten v. Experian Information Solutions,* where the plaintiff brought suit against a credit reporting agency for violation of the Fair Credit Reporting Act and its California equivalent. *Slaten*, 2023 WL 6890757, at *1. When the defendant moved to compel arbitration, the plaintiff opposed on the grounds of waiver, which the court agreed. *Id.* at *2. While the action was pending for eighteen months before the defendant moved, the court noted that the defendant waited for five months after it knew of the arbitration provision but "provide[d] no reason for the five-month delay." *Id.* at *4. Additionally, the court held that

> EIS' actions in this litigation suggest that it intentionally abandoned its right to arbitration. Since the Complaint was filed, EIS has met and conferred with Plaintiff's counsel, joined a motion for a protective order, sought to extend discovery deadlines multiple times, responded to written discovery, produced documents, participated in discovery conferences, and submitted a Joint Rule 26(f) Report.

*Id.* at *5.

The *Slaten* court also considered the defendant's statements made during litigation, noting:

> EIS made representations to the Court suggesting that it would not seek to compel arbitration. In the parties' Joint Rule 26(f) Report, EIS stated that it "anticipates it may file a motion for summary judgment" on issues going to the merits of Plaintiff's claims. (See Joint Rule 26(f) Report (Docket No. 19) at 5). At no point did EIS raise the potential of arbitration in the Joint Rule 26(f) Report, its Answer, or any other prior filing.

*Id.*

Here, the procedural posture aligns with *Slaten*, where there was no dispositive motion, and the parties conducted a Rule 26(f) conferences and submitted a reports, stipulated to a protective order, and conducted discovery. Likewise, in the Rule 26(f) report, Defendant only mentioned its intent to seek summary judgment, but made no mention of arbitration. Defendant also went further by proposing a schedule for class certification and ***requesting a jury trial***.

Defendant may argue that *it* did not propound discovery on Plaintiff, but here again, *Chan* is instructive. The *Chan* defendant made this same argument, but the court correctly rejected this, noting, "[i]t does not matter that Panera did not propound the discovery requests itself; its conduct in discovery reflected an intent to litigate a motion for class certification, which is inconsistent with the intent to compel arbitration." *Id.* at *4.

This is supported by the Ninth Circuit's decision in *Banq, Inc. v. Purcell*, where it stated:

> Defendants also participated in discovery proceedings before the district court by submitting an amended joint Rule 26(f) report, a discovery plan and scheduling order, a stipulated protective order, and a stipulation regarding documents and electronically stored information. While Defendants correctly point out that they were required to participate in at least some discovery proceedings, *see* Fed. R. Civ. P. 26(f), D. Nev. R. 26-1, their actions still demonstrate active litigation on the merits. Defendants chose to participate in these discovery proceedings without actively seeking or preserving their right to arbitrate. So, the discovery proceedings show Defendants wanted "to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (simplified).

*Banq, Inc.*, 2024 WL 4164126, at *2.

Defendant may also argue that it did not move to dismiss, and thus seek an order on the merits, but again *Chan* is directly on point. It noted, "no Ninth Circuit authority suggests that a defendant *must* move for a judgment on the merits in order to waive the right to arbitrate." *Chan*, 2024 WL 4137332, at *4. The *Slaten* court also rejected this same argument, stating, "[s]eeking a decision on the merits is just one consideration that '*may* satisfy this element.' In other words, a merits-based decision is neither sufficient nor necessary to demonstrate that [the defendant] acted inconsistently." *Slaten*, 2023 WL 6890757, at *1 (citing *Plows*, 812 F.Supp.2d at 1067) (emphasis in original).

In fact, the *Earn Guild*, *Chan*, and *Slaten* courts found waiver where the defendants did ***not*** seek dispositive rulings.

Finally, Defendant may argue that ten and half months is not sufficient delay. But there is no set amount of time necessary to constitute "a prolonged delay." To the contrary, in *Banq, Inc.*, the Ninth Circuit held that five months was sufficient "under the totality of the circumstances." *Banq, Inc.*, 2024 WL 4164126, at *2. And while *Banq*, involved a motion to dismiss, the delay was also significantly shorter than that present here, where the delay is much closer to the twelve

months at issue in *Earn Guild*. *See Morgan*, 596 U.S. at 415 (litigated for eight months before moving to compel arbitration); *Powel v. UHG I LLC*, 2024 WL 2305206, at *4 (S.D. Cal. May 21, 2024) (finding waiver after seven months and did ***not*** seek a dispositive ruling).

Further supporting this "totality" conclusion is the fact that Defendant asked for ***a jury trial***, while also jointly proposing a date for class certification briefing and participating in class certification discovery; none of which is allowed under the at-issue arbitration clause.

## CONCLUSION

Defendant waived the right to compel arbitration. It knew the terms on its own site, including the right to arbitrate. But it has acted inconsistently with those terms—for almost a year—by:

1) Answering the complaint without invoking arbitration as an affirmative defense:

2) Submitting a Joint Rule 26(f) Report which: a) mentions summary judgment but not arbitration; b) proposes a schedule for Plaintiff's motion on class certification; c) requests a jury trial;

3) Submitting a Stipulated Protective Order to facilitate class wide discovery;

4) Seeking to have the *Hernandez v. Event Tickets Centers, Inc.* action transferred to this Court for joint resolution of both matters; and

5) Engaging in class-wide discovery, including responding to class-wide discovery requests and conducting several meet-and-confers.

Having knowingly acted inconsistently with its right to arbitrate, Defendant waived its right to now compel Plaintiff to do so. Quite simply, it chose not to invoke the arbitration provision for nearly a year; it must live with that choice. Its Motion to Compel Arbitration should be denied.

Date: June 20, 2025           **BEN TRAVIS LAW, APC**

By: /s/ *Ben Travis*
Ben Travis (305641)
ben@bentravislaw.com
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

1
2       **REESE LLP**
        Michael R. Reese (SBN 206773)
3       *mreese@reesellp.com*
        100 West 93rd Street, 16th Floor
4       New York, New York 10025
        Telephone: (212) 643-0500
5
        **REESE LLP**
6       Charles Moore (*pro hac vice*)
        *cmoore@reesellp.com*
7       121 N. Washington Ave., 2nd Floor
        Minneapolis, MN 55401
8       Telephone: (212) 643-0500
9
        *Attorneys for Plaintiff and the Proposed Class*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

14
PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL ARBITRATION